***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before former Deputy Commissioner Hedrick and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of former Deputy Commissioner Hedrick, with modifications.
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Plaintiff was employed by defendant at its facility in Plymouth, North Carolina, from January 1, 1967, until the hearing before the Deputy Commissioner and continuing.
3. Defendant was self insured during the time of plaintiff's employment with defendant.
4. Plaintiff was last injuriously exposed to asbestos during his employment with defendant. Plaintiff was exposed to asbestos for thirty (30) days within a seven month period as set forth in N.C. Gen. Stat. § 97-57.
5. Defendant manufactures paper and paper products, including paper for crafts, bags, boxes, and pulp for baby diapers. The approximate size of defendant's plant in Plymouth, North Carolina, is 3/4 of a mile long. The entire facility is built on approximately 350 acres and encompasses about 20 different buildings. The newest building was built in the 1960s and the vast majority of the insulation used in the original construction of the buildings contained asbestos. Steam-producing boilers are used at the facility, along with hundreds of miles of steam pipes covered with asbestos insulation. The heat coming off the steam pipes is used, among other things, to dry the wet pulp/paper.
6. Plaintiff first worked in the boiler room when defendant hired him in 1967. He worked on the black liquor lines that fed into the boiler area. The boilers were wrapped in asbestos insulation. Plaintiff next worked on the paper machines, which had large asbestos-containing dryer felts that rotated to dry and move the pulp/paper. He also helped the millwrights install and repair pipes. While he worked on the pipes, the workers around him would tear off the asbestos insulation on the pipes. This would cause the air to become dusty and would make plaintiffs clothes filthy. Defendant did not provide plaintiff with a respirator for his protection against asbestos exposure while he was working in such areas.
7. Plaintiff does suffer from the occupational diseases of asbestos-related pleural disease and asbestosis. Plaintiff was initially only diagnosed with asbestos-related pleural plaques. During the pendency of this action, he developed interstitial lung disease. An amended Form 18B was filed for the additional diagnosis of asbestosis. Defendant agreed that plaintiff was diagnosed with asbestosis and asbestos-related pleural diseases on October 28, 1999, by Dr. Hayes, who was the examining panel physician.
8. Plaintiffs income during the fifty-two (52) weeks prior to his diagnosis on October 28, 1999, was $47,780.85, which is sufficient to produce the maximum compensation rate for 1999, $560.00. By separate stipulation by counsel for both parties on August 13, 2002, it is stipulated that plaintiff's wages were sufficient to earn the maximum compensation benefits available under the North Carolina Workers' Compensation Act in the year 2000, which was $588.00.
9. Plaintiff contends that he is entitled to an award of a 10% penalty pursuant to the provisions of N.C. Gen. Stat. § 97-12, and the defendant stipulated that should the claim be found compensable, the defendant would agree by compromise to pay an amount of 5% of all compensation, exclusive of medical compensation, as an award of penalty pursuant thereto.
10. Should N.C. Gen. Stat. §§ 97-60 through 97-61.7 be declared unconstitutional, additional testimony may be offered by the parties on the issues of loss of wage earning capacity and/or disability.
11. Should plaintiff be awarded compensation pursuant to N.C. Gen. Stat. § 9761.5(b), the Industrial Commission may include in the Opinion and Award language removing plaintiff from further exposure pursuant to N.C. Gen. Stat. 97-62.5(b).
12. The following documents were stipulated into evidence:
 a. Plaintiffs medical records from Raleigh Internal Medicine, Dr. Segarra and Dr. Gaziano;
b. Plaintiffs amended Form 18B;
c. Plaintiffs W-2 Wage and Tax Statement for 1998; and,
d. The curriculum vitae of all physicians who examined plaintiff
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was employed by defendant at its facility in Plymouth, North Carolina, from January 1, 1967, until the hearing before the Deputy Commissioner and continuing.
2. Defendant manufactures paper and paper products, including paper for crafts, bags, boxes, and pulp for baby diapers. The approximate size of defendant's plant in Plymouth, North Carolina, is 3/4 of a mile long. The entire facility is built on approximately 350 acres and encompasses about 20 different buildings. The newest building was built in the 1960s and the vast majority of the insulation used in the original construction of the buildings contained asbestos. Steam-producing boilers are used at the facility, along with hundreds of miles of steam pipes covered with asbestos insulation. The heat coming off the steam pipes is used, among other things, to dry the wet pulp/paper.
3. Plaintiff first worked in the boiler room when defendant hired him in 1967. He worked on the black liquor lines that fed into the boiler area. The boilers were wrapped in asbestos insulation. Plaintiff next worked on the paper machines, which had large asbestos-containing dryer felts that rotated to dry and move the pulp/paper. He also helped the millwrights install and repair pipes. While he worked on the pipes, the workers around him would tear off the asbestos insulation on the pipes. This would cause the air to become dusty with asbestos fibers and would make plaintiffs clothes filthy. Defendant did not provide plaintiff with a respirator for his protection against asbestos exposure while he was working in such areas.
4. Plaintiff was exposed to asbestos-containing materials on a regular basis for more than thirty working days or parts thereof within seven consecutive months from 1967 to the date of the hearing before the Deputy Commissioner.
5. The following medical records confirming the diagnosis of asbestosis were submitted to the Industrial Commission by counsel for the parties:
 a. Dr. Dominic Gaziano of Pulmonary Diseases and Internal Medicine, a B-reader, evaluated a chest x-ray dated October 15, 1998, and plaintiff's occupational history. It was his conclusion that the chest x-ray findings were compatible with bilateral pleural plaques. It was his overall opinion, to a reasonable degree of medical certainty, and the Full Commission finds as fact, that the x-ray changes are due to asbestos pleural-disease, which plaintiff acquired through his occupational exposure to asbestos.
 b. Dr. Jay T. Segarra, a B-reader, evaluated a chest x-ray dated July 7, 1999, which had a grade I film quality. He reported that inspection of the lung parenchyma reveal a diffuse interstitial patter, consisting of small irregular linear opacities within the middle and lower lung zones bilaterally, of size and shape S/T, with a profusion rating of 1/1. Examination of the pleural surfaces reveals bilateral circumscribed pleural thickening, in profile, along the lateral thoracic walls, width B, extent 2 bilaterally. It was Dr. Segerra's overall impression, and the Full Commission finds as fact, that there were pleural and parenchymal abnormalities present consistent with pulmonary asbestosis, assuming a sufficient environment exposure history and an adequate latency period.
 c. A CT scan report dated October 22, 1999, interpreted by Dr. Fred M. Dula of Piedmont Radiology in Salisbury, North Carolina, a radiologist and B-reader. He reported focal interstitial changes in both lung bases including short, thickened interlobular septal lines extending to the pleural surfaces. Overall, it was his opinion, and the Full Commission finds as fact, that there were interstitial changes in a distribution consistent with asbestosis.
 d. An advisory medical evaluation report authored by Dr. D. Allen Hayes, a panel physician who examined plaintiff at the request of the North Carolina Industrial Commission on October 28, 1999. He took an occupational history of the plaintiff and reported that plaintiff had worked at Weyerhaeuser for the past 34 years, and has been a pipe fitter's helper and worked in the boiler room. Plaintiff had to remove asbestos to work around boiler pipes. Additionally, plaintiff stated to Dr. Hayes that he had previously smoked less than one-half pack of cigarettes per day, but stopped smoking about 20 to 25 years prior to that time.
 e. After a full physical evaluation, review of medical records, and performance of a pulmonary function test, electrocardiogram, blood test, and chest x-ray, it was the conclusion of Dr. Hayes that plaintiff has asbestosis and probable asbestos-related pleural plaques. He recommended that arrangements be made to separate plaintiff from his workplace exposure to asbestos. He also advised a re-evaluation by the Advisory Medical Committee after one year. The CT scan performed on October 22, 1999, was reviewed by Dr. Hayes subsequent to the plaintiff's panel exam. Dr. Hayes reported that he observed parenchymal changes consistent with subtle degrees of sub-pleural fibrosis, which would be consistent with asbestosis in an appropriate clinical setting.
 6. Plaintiff does suffer from asbestosis and asbestos-related pleural disease as a result of his many years of asbestos exposure while employed by the defendant. His pulmonary impairment is permanent and likely to progress. Plaintiff would benefit from medical monitoring, evaluation, and some treatment in the future as a result of his asbestosis and asbestos-related pleural disease. Further, medical monitoring is reasonably necessary due to his increased risk of developing lung and other asbestos-related cancers.
 7. Plaintiffs income during the fifty-two (52) weeks prior to his diagnosis on October 28, 1999, was $47,780.85, which is sufficient to produce the maximum compensation rate for 1999, $560.00. By separate stipulation by counsel for both parties on August 13, 2002, it is stipulated that plaintiff's wages were sufficient to earn the maximum compensation benefits available under the North Carolina Workers' Compensation Act in the year 2000, which was $588.00.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff contracted the occupational diseases of asbestosis and asbestos-related pleural disease as a result of his employment with defendant. N.C. Gen. Stat. §§ 97-53(24) and 97-62.
2. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant, and for as much as 30 days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57; Clark v. ITTGrinnell Industrial Piping, Inc., 141 N.C. App. 417, 539 S.E.2d 369
(2000); Haynes v. Feldspar Producing Co., 222 N.C. 163, 22 S.E.2d 275
(1942); Barber v. Babcock Wilcox Construction Company,101 N.C. App. 564, 400 S.E.2d 735 (1991).
3. N.C. Gen. Stat. § 97-61.5 provides in pertinent part that following a first hearing determination by the Industrial Commission that a claimant has asbestosis, based upon either medical evidence or by agreement of the parties, the Commission "shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis . . ." and that upon removal the employee shall be entitled to "weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages . . . which compensation shall continue for a period of 104 weeks." Accordingly, the Commission hereby issues an Order of Removal. Id. The Order of Removal does not constitute an order removing plaintiff from his employment with defendant, but plaintiff is ordered removed from any occupational exposure to asbestos for the remainder of his employment.
4. While it has been determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure, see Austin v. General Tire, 354 N.C. 344,553 S.E.2d 680 (2001), in this case plaintiff remains in defendant's employ. It has long been recognized that the purpose of the order of removal is not only to stop continuing exposure of the employee to asbestos fibers, but also to ensure that the employee who continues to work avoids any future exposure. See Roberts v. Southeastern Magnesia andAsbestos Co., 61 N.C. App. 706, 301 S.E.2d 742 (1983). It has also long been recognized that the award of 104 weeks of compensation has the additional purpose to compensate the employee for the incurable nature of the disease. Honeycutt v. Carolina Asbestos Co., 235 N.C. 471,70 S.E.2d 426 (1952).
5. The legislative intent of Sections 97-61.1 through 97-61.7 of the North Carolina General Statutes is to promote workplace safety by encouraging employees to remove themselves from further injurious exposures. Removal from further exposure to the hazards of asbestos can be accomplished by removal from the hazard as opposed to removal from the employment. Austin v. General Tire, 141 N.C. App. 397, 540 S.E.2d 824
(2000), rev'd on other grounds, 354 N.C. 344, 553 S.E.2d 680 (2001);Roberts v. Southeastern Magesia and Asbestos Co., 61 N.C. App. 706,301 S.E.2d 742 (1983); N.C.G.S. § 97-53(28)(i);29 C.F.R. § 1910.134.
6. Pursuant to N.C. Gen. Stat. § 97-61.5, the weekly amount of plaintiffs 104 weeks of compensation is to be based upon his "average weekly wages before removal from the industry, but no more than the amount established annually to be effective October 1 as provided in G.S. 97-29. . . ." The parties have stipulated that plaintiff's wages were sufficient to entitle him to the maximum compensation-rate permitted under the Act for the year 2000 when plaintiff was first ordered removed. Therefore, plaintiff is entitled to 104 weeks of compensation as a result of the order of removal at the weekly benefit rate of $588.00. N.C. Gen. Stat. § 97-61.5; Roberts v. Southeastern Magnesia andAsbestos Co., 61 N.C. App. 706, 301 S.E.2d 742 (1983).
7. The issue of the constitutionality of N.G. Gen. Stat. §§ 97-60et seq., has been raised by defendant and ruled upon by the North Carolina Court of Appeals. In Jones v. Weyerhaeuser Co., 141 N.C. App. 482,539 S.E.2d 380 (2000), disc. review denied, 353 N.C. 525, 549 S.E.2d 858
(2001), and in Clark v. 117 Grinnell Industrial Piping, Inc.,141 N.C. App. 417, 539 S.E.2d 369 (2000), the Court ruled unanimously that the provisions of N.C. Gen. Stat. § 97-61.5 are constitutional.
8. Plaintiff is entitled to have defendant pay for such medical expenses incurred or to be incurred as a result of plaintiff's asbestos related pleural disease and asbestosis as may be required to monitor, provide relief, effect a cure, or lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-25, and 97-59.
9. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. §§97-61.1, et seq., and is further entitled to any additional benefits due to plaintiff, which shall be determined after additional examinations and hearings.
10. Defendant stipulated that, should the Industrial Commission determine that plaintiff contracted the occupational disease asbestosis during the course and scope of his employment with defendant, defendant would waive further proof needed under N.C. Gen. Stat. § 97-12 (that the injury is caused by the willful failure of the employer to comply with any statutory requirement) and, in compromise of this issue, would accept a 5% penalty against all compensation due other than medical compensation. The Industrial Commission has so determined and defendant's offer of a compromise 5% penalty is deemed appropriate.
 *********** ORDER OF REMOVAL
Plaintiff is hereby ordered removed from any occupation that further exposes him to the hazards of asbestos. N.C. Gen. Stat. § 97-61.5(b).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendant shall pay to plaintiff compensation for 104 weeks as a result of his contraction of asbestosis, and asbestos-related pleural disease while employed by defendant and as a consequence of the Industrial Commission's Order of Removal, at a weekly rate of $588.00, commencing on October 28, 1999. Said sum shall be paid in a lump sum to plaintiff without commutation, subject to the attorney's fee approved herein.
2. Defendant shall pay an additional sum of 5% of the weekly compensation awarded in Paragraph 1 above to plaintiff, which shall also be paid in a lump sum. As per agreement of the parties, defendant shall also pay a 10% late penalty pursuant to N.C. Gen. Stat. § 97-18.
3. Defendant additionally shall pay interest in the amount of 8% per annum on this award from the date of the initial hearing on this claim, March 15, 2000, until paid in full. The interest shall be paid in full to the claimant and is not subject to attorneys' fees. N.C. Gen. Stat. § 97-86.2.
4. Defendant shall pay all medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
5. Plaintiff shall undergo additional examinations as provided by law.
6. A reasonable attorney's fee of 25% of the compensation due plaintiff as was awarded in paragraphs 1 and 2 above is approved for plaintiffs counsel. Defendant shall deduct 25% of the lump sum otherwise due plaintiff shall pay such 25% directly to plaintiffs counsel.
7. The Commission hereby retains jurisdiction in this matter to address the issue of permanent impairment, as plaintiff has not undergone the additional panel examination as required by law for such determination. Upon completion of such examinations, should the parties be unable to agree on what additional compensation, if any, is due, the parties may request a hearing before this Commission on this matter.
8. Defendant shall pay the costs of this proceeding.
 *********** ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearing, if necessary. following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiffs eligibility for further indemnity compensation under the Act beyond the 104 weeks awarded herein and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
This 11th day of October 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/__________________ BERNADINE S. BALANCE COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER